UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
ALLSTATE INSURANCE COMPANY,

                               Plaintiff,

     - against -

VITALITY PHYSICIANS GROUP PRACTICE
P.C., a/k/a/ VITALITY PSYCHIATRY GROUP,
MITCHELL CABISUDO, SEAN CAVANAUGH,
JANE DOE, a fictitious name, SARAH PERLIK,
JESSICA SCHAEFER, DANIELLE SEMISA, and
JESSALYN SUO,

                            Defendants.
--------------------------------------------------------------x

**OPINION & ORDER**

No. 20-CV-4132 (CS)

<u>Appearances</u>:

Rosa M. Feeney
Lewis Johs Avallone Aviles, LLP
Islandia, New York
*Counsel for Plaintiff*

Michael D. Brown
Ross J. Kartez
Ruskin Moscou Faltischek, P.C.
Uniondale, New York
*Counsel for Defendants Vitality Physicians Group Practice P.C. and Mitchell Cabisudo*

<u>Seibel, J.</u>

     On May 29, 2020, Plaintiff Allstate Insurance Company ("Allstate" or "Plaintiff") filed a

declaratory judgment action in this Court against Defendants Vitality Physicians Group Practice

P.C., a/k/a Vitality Psychiatry Group ("Vitality"), Mitchell Cabisudo (together with Vitality, the

"Vitality Defendants"), Sean Cavanaugh, and several women who had asserted claims against

Cavanaugh and the Vitality Defendants.  (Doc. 1.)  Before the Court is Plaintiff's Motion for

Judgment on the Pleadings.  (Doc. 75.)  For reasons discussed below, Plaintiff's motion is GRANTED.

## I.     BACKGROUND

### A.     Facts

The following facts are undisputed.[1]  Vitality is a medical practice licensed in the State of New York.  (Doc. 33 ("AC") ¶ 4; Doc. 42 ("Vitality Answer") ¶ 4; Doc. 50 ("Cavanaugh Answer") ¶ 2.)  Dr. Cabisudo is Vitality's principal physician, and Cavanaugh was employed by Vitality as a physician's assistant at all times relevant to this action.  (AC ¶ 24; Vitality Answer ¶ 24; Cavanaugh Answer ¶ 2.)  Prior to the events at issue, Allstate issued two insurance policies to Vitality:  a Businessowners Policy, (AC ¶ 16; *see id.* Ex. A), and a Commercial Umbrella Liability Policy ("Umbrella Policy," and together with the Businessowners Policy, the "Insurance Policies" or "Policies"), (*id.* ¶ 20; *see id.* Ex. B).  Both Policies were effective March

---

[1] As discussed in Part II.A below, the Court on a plaintiff's motion for judgment on the pleadings assumes the truth of the facts set forth in the Amended Complaint that are undenied by Defendants.  The Court therefore includes in this section allegations that (1) Defendants admit; (2) as to which they deny knowledge or information sufficient to form a belief, at least where there can be no reasonable controversy over the accuracy of the allegation; and (3) as to which they refer the Court to the referenced document.  This section also includes some allegations Defendant Cavanaugh denies but the truth of which is plain from underlying documents.  *See Partner Reinsurance Co. v. RPM Mortg., Inc.*, No. 18-CV-5831, 2019 WL 3802235, at *5 (S.D.N.Y. Aug. 13, 2019) ("If the allegations of a pleading are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the pleading.") (cleaned up); *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 168 (S.D.N.Y. 2015) (where allegations of pleading are contradicted by document, document controls, and therefore motion for judgment on the pleadings "can be particularly appropriate in breach of contract cases involving legal interpretations of the obligations of the parties") (cleaned up).  These instances generally involve Cavanaugh denying an allegation by Allstate that a plaintiff has made a particular allegation in underlying litigation; the Court understands Cavanaugh to be denying the truth of the underlying allegation, not the truth of Allstate's description of it.

1, 2018, (*id.* Ex. A at 2; *id.* Ex. B at 2),[2] and were renewed on March 1, 2019, (*id.* Ex. A.II at 2; *id.* Ex. B at 64).  Both Policies listed "VITALITY PHYSICIANS GROUP PRACTICE P.C." as the named insured.  (*Id.* Ex. A at 7; *id.* Ex. A.II at 9; *id.* Ex. B at 5.)

### 1. The Insurance Policies

#### a. Businessowners Policy

The Businessowners Policy provides in pertinent part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent.  However, we will have no duty to defend the insured against any 'suit' seeking damages for "bodily injury" . . . to which this insurance does not apply.

(*Id.* Ex. A at 36.)  The policy's definition of an "insured" includes, as to Vitality, its executive officers and directors, "but only with respect to their duties as [such]," as well as its employees, "but only for acts within the scope of their employment [by Vitality] or while performing duties related to the conduct of [Vitality's] business."  (*Id.* Ex. A at 90.)  Furthermore, the policy applies only to "'bodily injury' . . . caused by an 'occurrence.'"  (*Id.* Ex. A at 81.)  "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person."  (*Id.* Ex. A at 92.) "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (*Id.* Ex. A at 94.)

This coverage is limited by a number of policy exclusions.  First, the policy does not apply to any injury that is "expected or intended from the standpoint of the insured."  (*Id.* Ex. A at 83.)  Second, the policy does not apply to any injury that is "caused by the rendering or failure to render any professional service."  (*Id.* Ex. A at 86.)  This provision is followed by a non-

---

[2] Citations to Exhibits attached to the Amended Complaint refer to the page numbers generated by the Court's Electronic Filing System.

exhaustive list of examples of excluded professional services, including "[m]edical, surgical, dental, x-ray or nursing services treatment, advice or instruction" and "[a]ny health or therapeutic service treatment, advice or instruction." (*Id.*) In addition, the definition of an insured excludes employees to the extent that any bodily injury arises out of an employee's "providing or failing to provide professional health care services." (*Id.* Ex. A at 90.) Finally, the Businessowners Policy includes an abuse or molestation exclusion, (*id.* ¶ 19), which provides:

> This insurance does not apply to "bodily injury" . . . arising out of: (a) [t]he actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or (b) [t]he negligent: (i) [e]mployment; (ii) [i]nvestigation; (iii) [s]upervision; (iv) [r]eporting to the proper authorities, or failure to so report; or (v) [r]etention; of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) above.

(*Id.* Ex. A at 105.)

### b. Umbrella Policy

The Umbrella Policy's relevant coverage and exclusion provisions are substantially the same as those in the Businessowners Policy. The policy provides in pertinent part:

> We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" . . . when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. . . . However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" . . . to which this insurance does not apply.

(*Id.* Ex. B at 22.) The Umbrella Policy's definition of an "insured" is substantially the same as the definition in the Businessowners Policy.[3] (*See id.* Ex. B at 31.) Like the Businessowners Policy, the Umbrella Policy only covers injuries resulting from an

---

[3] The Umbrella Policy does not exclude from the definition of an insured an employee who causes injury by providing or failing to provide professional healthcare services. (*See* AC Ex. A at 90.) But given the professional services exclusion, this difference is not material here.

"occurrence."  (*Id.* Ex. B at 22.)  The Umbrella Policy contains the same exclusions for intentional injury, (*id.* Ex. B at 23), professional services, (*id.* Ex. B at 26-27), and abuse or molestation, (*id.* Ex. B at 46).  The parties do not raise any differences between the Policies that need to be addressed to resolve the issues presented here.

### 2.    The Underlying Actions

#### a.    <u>Patricia Murphy</u>

Plaintiff alleges that Patricia Murphy contacted Vitality at an unstated time, claiming that while she was a Vitality patient, Cavanaugh sent her inappropriate and sexually explicit text messages, which included nude photographs of Cavanaugh and propositions for sex.  (*Id.* ¶¶ 26-27; *see id.* Ex. C at 6.)[4]  Cavanaugh and the Vitality Defendants sought coverage from Allstate, which denied and disclaimed the obligation to defend or indemnify any party under the Umbrella Policy.  (AC Ex. C at 2.)  In doing so, Allstate stated its position that Cavanaugh was not an "insured" under the policy, as he was not acting within the scope of his employment, and, moreover, that his acts were barred by the intentional injury exclusion.  (*Id.* Ex. C at 6.)  Allstate also stated that Murphy's injuries did not constitute bodily injury as defined by the policy.  (*Id.*)  Allstate characterized Murphy's claim as arising from allegations of "sexual harassment."  (*Id.*)

Plaintiff represents that no litigation has been brought by Murphy against Cavanaugh or the Vitality Defendants, (Doc. 76 ("P's Mem.") at 3), and accordingly, Allstate has voluntarily dismissed Murphy from this suit without prejudice, (Doc. 57).

---

[4] Cavanaugh denies these allegations, (Cavanaugh Answer ¶ 3), but the Court understands him to dispute the truth of Murphy's underlying allegation, not that Murphy contacted Vitality and made the cited claims.

b.    Jane Doe

Several other women commenced litigation against Cavanaugh and the Vitality

Defendants.  (AC ¶¶ 2, 24; Vitality Answer ¶¶ 2, 24; Cavanaugh Answer ¶ 2.)[5]

A plaintiff using the name Jane Doe sued Cavanaugh and the Vitality Defendants in the

Supreme Court of the State of New York, Orange County, for events that occurred while she was

a Vitality patient from August 2018 to July 2019.  (AC ¶¶ 29-31; *see id.* Ex. D.)  Doe alleged

that Cavanaugh diagnosed her with bipolar disorder without any scientific basis and that he used

medically unnecessary heart rate checks with a stethoscope as a pretense to force Doe to remove

portions of her clothing and to allow Cavanaugh to fondle her breasts.  (*Id.* Ex. D ¶¶ 20-22,

25-34.)  Accordingly, Doe brought claims for sexual battery and professional negligence against

Cavanaugh.  (*Id.* Ex. D ¶¶ 59-60, 65.)  She further alleged that Vitality knew or should have

known of Cavanaugh's propensity for sexual misconduct prior to hiring him, and that Vitality

failed to investigate or terminate Cavanaugh's employment after learning, in July 2019, that he

had sent inappropriate sexual text messages to at least one former patient.  (*Id.* Ex. D ¶¶ 35-43,

46-49.)  Accordingly, Doe brought claims for negligent hiring, investigation, and retention

against the Vitality Defendants, (*id.* Ex. D. ¶¶ 39, 43, 48-49), and for professional negligence

against Dr. Cabisudo, (*id.* Ex. D. ¶ 55).

Allstate has been providing a defense to the Vitality Defendants in Doe's action, (*id.*

¶ 45; Vitality Answer ¶ 45), but is now seeking a declaration that neither the Businessowners

Policy nor the Umbrella Policy provides coverage for the defense or indemnification of either

_____

[5] Cavanaugh denies knowledge or information sufficient to form a belief as to these
paragraphs, but the Court does not understand how he could be unaware of this litigation, which
is brought against him and which is well documented.  Indeed, he has counterclaimed for
coverage in these actions.  (*See* Cavanaugh Answer ¶¶ 12-15.)

Cavanaugh or the Vitality Defendants on Doe's claims, and that its assigned counsel may

withdraw, (AC ¶¶ 48-49).[6]  It previously denied and disclaimed the obligation to defend or

indemnify Cavanaugh or the Vitality Defendants on these claims under either the

Businessowners Policy, (*see id.* Ex. E), or the Umbrella Policy, (*see id.* Ex. F).  Allstate

maintained that Cavanaugh is not an insured for the purposes of the alleged acts, (*see, e.g.*, *id.*

Ex. E at 6), and additionally relied on the policy exclusions for injuries resulting from intentional

acts, professional services, and abuse or molestation, (*id.* ¶ 46).[7]

       c.     <u>Sarah Perlik</u>

Sarah Perlik sued Cavanaugh and Vitality in the Supreme Court of the State of New

York, Ulster County, for events that occurred while she was a Vitality patient on or about April

11, 2019.  (*Id.* ¶¶ 50-51; *see id.* Ex. G)  Perlik alleged that Cavanaugh touched her intentionally,

inappropriately, and without her consent.  (*Id.* Ex. G ¶¶ 8-9.)  Accordingly, Perlik brought claims

for sexual battery and professional negligence against Cavanaugh, (*id.* Ex. G ¶¶ 11, 14-15), and

for negligent supervision and professional negligence against Vitality, (*id.* Ex. G ¶ 20).

Allstate denied and disclaimed the obligation to defend or indemnify any party under

either the Businessowners Policy or the Umbrella Policy, in reliance on the same grounds, (*id.*

Ex. H), and now seeks a declaration that neither Policy provides coverage for the defense or

indemnification of either Cavanaugh or Vitality on Perlik's claims.  (*Id.* ¶ 58; Vitality Answer

---

[6] The Vitality Defendants admit that Allstate is seeking the alleged relief, but deny that Plaintiff is entitled to it.  The Vitality Defendants also deny knowledge or information sufficient to form a belief regarding "what defense counsel and Allstate are doing in collateral actions." (Vitality Answer ¶¶ 48-49.)

[7] Cavanaugh denies this allegation, (Cavanaugh Answer ¶ 3), but again, because he could not reasonably deny what position Allstate has taken, the Court construes his denial as a denial that Allstate's position has merit.

¶ 58; Cavanaugh Answer ¶ 2.)[8]  Allstate has been granted default judgment against Perlik in this action.  (Doc. 80.)

### d. Jessica Schaefer

Jessica Schaefer sued Cavanaugh and the Vitality Defendants in the Supreme Court of the State of New York, Orange County, for events that occurred after she became a Vitality patient on or about January 26, 2019.  (AC ¶¶ 59, 63; *see id.* Ex. I.)  Perlik alleged that Cavanaugh fondled her breasts under the pretense of performing a physical exam.  (*Id.* Ex. I ¶ 12.)  Accordingly, Schaefer's complaint suggests a claim for sexual battery.  Additionally, Schaefer brought claims against Cavanaugh and the Vitality Defendants for professional negligence, (*id.* Ex. I ¶ 14), and under the theory of *res ipsa loquitur*, (*id.* Ex. I ¶ 24).  Schaefer also brought claims against the Vitality Defendants under the theory of *respondeat superior*.  (*Id.* Ex. I ¶ 7.)

Allstate denied and disclaimed the obligation to defend or indemnify any party under either the Businessowners Policy or the Umbrella Policy, in reliance on the same grounds, (*see id.* Ex. J), and now seeks a declaration that neither Policy provides coverage for the defense or indemnification of either Cavanaugh or the Vitality Defendants on Schaefer's claims, (AC ¶ 71; Vitality Answer ¶ 71; Cavanaugh Answer ¶ 2).[9]

---

[8] Vitality admits Allstate is seeking the declaration described, but denies that Plaintiff is entitled to the relief requested.  Cavanaugh denies knowledge or information sufficient to form a belief, but this assertion is puzzling.  There can be no legitimate question as to what Allstate is seeking, so perhaps Cavanaugh meant to deny knowledge or information as to what coverage exists under the Policies, but even that would make no sense, given Cavanaugh's statement in his counterclaim that he "is entitled to coverage in the underlying actions as an insured under the insurance policies."  (Cavanaugh Answer ¶ 13.)

[9] The Vitality Defendants admit Allstate is seeking the declaration described, but deny that Plaintiff is entitled to the relief requested.  Cavanaugh denies knowledge or information sufficient to form a belief.  *See supra* note 8.

e.    Danielle Semisa

Danielle Semisa sued Cavanaugh and the Vitality Defendants in the Supreme Court of New York, Orange County, for events that occurred after she became a Vitality patient in February 2019.  (AC ¶¶ 72, 76; *see id.* Ex. K.)  Semisa alleged that on or about April 29, 2019, Cavanaugh reached under her shirt and fondled her breasts while checking her heart rate.  (*Id.* Ex. K ¶ 13.)  Semisa further alleged that even after she complained to Vitality staff, Cavanaugh repeated the offensive contact on or about July 10, 2019.  (*Id.* Ex. K ¶¶ 14-15.)  Accordingly, Semisa brought a sexual battery claim against Cavanaugh.  (*Id.* Ex. K ¶ 33.)  Additionally, Semisa brought claims against Cavanaugh and the Vitality Defendants for professional negligence, (*id.* Ex. K ¶ 17), and under the theory of *res ipsa loquitur*, (*id.* Ex. K ¶ 24).  Semisa also brought claims against the Vitality Defendants under the theory of *respondeat superior*.  (*Id.* Ex. K ¶ 7.)

Allstate denied and disclaimed the obligation to defend or indemnify any party under either the Businessowners Policy or the Umbrella Policy, in reliance on the same grounds, (*see id.* Ex. L), and now seeks a declaration that neither Policy provides coverage for the defense or indemnification of either Cavanaugh or the Vitality Defendants on Semisa's claims, (AC ¶ 86; Vitality Answer ¶ 86; Cavanaugh Answer ¶ 2).[10]

f.    Jessalyn Suo

Jessalyn Suo sued Cavanaugh and Vitality in the Supreme Court of the State of New York, Orange County, for events that occurred while she was a Vitality patient on or about February 21, 2019.  (Doc. 77 ("P's Decl.") Ex. S ¶ 12.)  Suo alleged that Cavanaugh touched her

---

[10] The Vitality Defendants admit Allstate is seeking the declaration described, but deny that Plaintiff is entitled to the relief requested.  Cavanaugh denies knowledge or information sufficient to form a belief.  *See supra* note 8.

intentionally, inappropriately, and without her consent. (*Id.* Ex. S ¶¶ 8-9.) Accordingly, Suo brought claims for sexual battery and professional negligence against Cavanaugh, (*id.* Ex. S ¶¶ 11, 16-17), and for negligent supervision and professional negligence against Vitality, (*id.* Ex. S ¶ 22).

Allstate denied and disclaimed the obligation to defend or indemnify any party under either the Businessowners Policy or the Umbrella Policy, in reliance on the same grounds, (*see id.* Ex. T), and now seeks a declaration that neither Policy provides coverage for the defense or indemnification of either Cavanaugh or the Vitality Defendants on Suo's claims, (*see* AC ¶ 89; Vitality Answer ¶ 89; Cavanaugh Answer ¶ 2).[11] Allstate has been granted default judgment against Suo in this action. (Doc. 80.)

### B. Procedural History

Allstate brought this action on May 29, 2020, seeking a declaration that it is not required to provide Cavanaugh or the Vitality Defendants with a defense or indemnification for the underlying actions discussed above. (*See* Doc. 1.) With the Court's leave, (*see* Minute Entry dated Sept. 21, 2020), Allstate filed the Amended Complaint on September 23, 2020. Jessica Schaefer, Danielle Semisa, and Jane Doe (together with Sarah Perlik and Suo, the "Claimant Defendants") have answered the Amended Complaint. (*See* Docs. 40-41, 48.) Cavanaugh answered and counterclaimed, asserting his entitlement to coverage for defense and indemnification in the underlying actions under the Policies issued by Allstate to Vitality. (Cavanaugh Answer ¶¶ 12-15.) The Vitality Defendants also answered and counterclaimed

---

[11] Vitality refers the Court to Allstate's letter denying and disclaiming coverage for Suo's claims, (P's Decl. Ex. T), as Suo had not yet brought suit at the time Allstate filed the Amended Complaint, (*see id.* Ex. S). Cavanaugh denies knowledge or information sufficient to form a belief. *See supra* note 8.

against Allstate for coverage.  (*See* Vitality Answer at 73-74.)  Patricia Murphy was voluntarily dismissed from this action by Allstate.  (Doc. 57.)  Perlik and Suo did not appear and default judgments were entered against them.  (Doc. 80; *see* Minute Entry dated Feb. 2, 2021.)

Allstate filed the instant motion, (Doc. 75), and a supporting memorandum of law, (P's Mem.), on January 14, 2021.  The Vitality Defendants timely filed an opposing memorandum of law on March 2, 2021.  (Doc. 83 ("Ds' Opp.").)  Cavanaugh did not file opposition by the March 2, 2021 deadline.  (*See* Doc. 81.)  On March 16, 2021, Allstate filed a reply memorandum of law. (Doc. 84 ("P's Reply").)

## II.   LEGAL STANDARD

### A.   Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "a party may move for judgment on the pleadings" any time "[a]fter the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c); *see VoiceAge Corp. v. RealNetworks, Inc.*, 926 F. Supp. 2d 524, 529 (S.D.N.Y. 2013).  "Judgment on the pleadings 'is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings.'"  *VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, 594 F. Supp. 2d 334, 339 (S.D.N.Y. 2008) (quoting *Sellers v. M.C. Floor Crafters Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)), *aff'd*, 355 F. App'x 507 (2d Cir. 2009) (summary order).  Thus, "[t]he motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court."  5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed. 2021).  "'In evaluating a Rule 12(c) motion, the court must view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party.'"  *In re*

*Trusteeships Created by Tropic CDO I Ltd.*, 92 F. Supp. 3d 163, 171 (S.D.N.Y. 2015) (quoting

*Madonna v. United States*, 878 F.2d 62, 65 (2d Cir. 1989)). "When a plaintiff moves for

judgment on the pleadings, 'the question for determination is whether on the undenied facts

alleged in the complaint and assuming as true all the material allegations of fact in the answer,

the plaintiff is entitled to judgment as a matter of law.'" *Id.* (quoting *Mo. Pac. R.R. Co. v. Nat'l

Milling Co.*, 409 F.2d 882, 884-85 (3d Cir. 1969)). "In other words, if a defendant's answer

admits, alleges, or fails to deny facts which, taken as true, would entitle a plaintiff to relief on

one or more claims supported by the complaint, then the plaintiff's Rule 12(c) motion should be

granted." *Mitsui Rail Cap., LLC v. Detroit Connecting R.R. Co.*, No. 13-CV-13502, 2014 WL

3529214, at *2 (E.D. Mich. July 16, 2014). "Judgment pursuant to Rule 12(c) can be particularly

appropriate in breach of contract cases involving legal interpretations of the obligations of the

parties" because "initial interpretation of a contract is a question of law for a court." *VoiceAge*,

926 F. Supp. 2d at 529. This principle applies to insurance contracts. But

> [a] declaration that an insurer is without obligation to defend a pending action
> could be made only if it could be concluded as a matter of law that there is no
> possible factual or legal basis on which the insurer might eventually be held to be
> obligated to indemnify the insured under any provision of the insurance policy.

*Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (1985) (cleaned up).

This conclusion may be drawn from the allegations of the underlying complaints. *See Bhd. Mut.

Ins. Co. v. Ludwigsen*, No. 16-CV-6369, 2018 WL 4211319, at *17 (S.D.N.Y. Sept. 4, 2018); *see

also Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 159 (1992) ("Although [the insured] denies

the allegations of the [underlying] complaint, we must assume – for the purpose of determining

coverage – that what is alleged actually happened.").

### B.     Documents Properly Considered

On a Rule 12(c) motion, the Court may ordinarily consider only "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (cleaned up).  "A complaint is also deemed to include any . . . materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint."  *Id.* (cleaned up).  A document is "integral" if the complaint "relies heavily on its terms and effect."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (cleaned up).

Here, Allstate attached to the Amended Complaint and its attorney declaration in support of its motion for judgment on the pleadings the Businessowners Policy and the Umbrella Policy, (*see* AC Exs. A, B), the complaints filed by the Claimant Defendants in the underlying actions, (*see id.* Exs. D, G, I, K; P's Decl. Ex. S), and its letters denying and disclaiming coverage under the Policies, (*see* AC Exs. C, E, F, H, J, L, M).  All of these documents are incorporated by reference in the Amended Complaint or are otherwise integral to and relied on in the Amended Complaint.  As such, the Court may properly consider these documents in ruling on the instant motion.  *See L-7 Designs*, 647 F.3d at 422.

### C.     Failure to Oppose

Although Cavanaugh has failed to oppose the instant motion, this failure is not a sufficient ground to grant judgment on the pleadings for Allstate against him.  *See McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000).  A Rule 12(c) motion asks the Court to resolve the dispute as a matter of law, which the Court is perfectly "capable of determining based on its own

reading of the pleading[s] and knowledge of the law." *Id.* at 322-23. Accordingly, the Court

will evaluate the merits of Allstate's motion as to both Cavanaugh and the Vitality Defendants.

## III.   DISCUSSION

Allstate argues that it is entitled to judgment on the pleadings because the unambiguous

terms of the Insurance Policies establish that Allstate has no duty to defend or indemnify

Cavanaugh or the Vitality Defendants.

### A.   The Duty to Defend and Indemnify

"[A]n insurer's obligation to indemnify an insured must be based on the insurance

agreement." *Jakobson Shipyard, Inc. v. Aetna Cas. & Sur. Co.*, 961 F.2d 387, 389 (2d Cir.

1992). Under New York law,[12] "[a]n insured has the burden of proving that the provisions of a

policy provide coverage" in the first instance. *Chase Manhattan Bank, N.A. v. Travelers Grp.,

Inc.*, 702 N.Y.S.2d 60, 61 (App. Div. 2000). This burden requires the insured to show that the

allegations of the underlying complaint bring the action within the insuring clause of the policy

purchased. *See First Invs. Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 165-66 (2d Cir. 1998).[13]

Once the insured demonstrates that coverage exists, the burden shifts to the insurer to show an

---

[12] The parties do not dispute that New York law applies. (*See* P's Mem. at 16-17; Ds' Opp. at 5.) Application of New York law is proper as the policyholder, Vitality, is located in New York and the parties to the agreements understood New York to be the location of the insured risk. *See Lapolla Indus., Inc. v. Aspen Specialty Ins. Co.*, 962 F. Supp. 2d 479, 485 (E.D.N.Y. 2013), *aff'd*, 566 F. App'x 95 (2d Cir. 2014) (summary order). Indeed, the Policies provide for application of New York law. (*See, e.g.*, AC Ex. A at 44.)

[13] "It is well established under New York law that a policyholder bears the burden of showing that the insurance contract covers the loss," and "this burden does not shift to the insurer where, as here, the insurer moves first for declaratory judgment." *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 388 F. Supp. 3d 304, 323 (S.D.N.Y. 2019) (cleaned up), *aff'd*, 828 F. App'x 84 (2d Cir. 2020) (summary order); *see Schoeps v. Museum of Modern Art*, 594 F. Supp. 2d 461, 463 (S.D.N.Y. 2009) ("In an action for declaratory judgment, the burden of proof rests on the party who would bear it if the action were brought in due course as a claim for non-declaratory relief.").

exclusion from coverage. *Jakobson Shipyard*, 961 F.2d at 389; *see Village of Piermont v. Am. Alternative Ins. Corp.*, 151 F. Supp. 3d 438, 448 (S.D.N.Y. 2015) ("When an exclusion clause is relied upon to deny coverage, the burden rests upon the insurance company to demonstrate that the allegations of the complaint can be interpreted only to exclude coverage.") (cleaned up).

"In New York, an insurer's duty to defend is 'exceedingly broad' and distinct from the duty to indemnify." *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014) (quoting *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006)). While "[t]he duty to [indemnify] is determined by the actual basis for the insured's liability to a third person," "[t]he duty to defend is measured against the allegations of pleadings." *Id.* (quoting *Servidone Constr. Corp.*, 64 N.Y.2d at 424). "'The duty to defend remains even [if] facts outside the four corners of the pleadings indicate that the claim may be meritless or not covered.'" *Id.* (cleaned up) (quoting *Cook*, 7 N.Y.3d at 137.) "[T]he court's duty is to compare the allegations of the complaint to the terms of the policy to determine whether a duty to defend exists." *A. Meyers & Sons Corp. v. Zurich Am. Ins. Grp.*, 74 N.Y.2d 298, 302-03 (1989).

"'An insurer will be called upon to provide a defense whenever the allegations of the complaint suggest a reasonable possibility of coverage.'" *Euchner-USA, Inc.*, 754 F.3d at 141 (cleaned up) (quoting *Cook*, 7 N.Y.3d at 137). "If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be." *Id.* (cleaned up). The "duty to defend the entire action is triggered even if only one claim is potentially covered by the insurance policy." *Mass. Bay Ins. Co. v. Penny Preville, Inc.*, No. 95-CV-4845, 1996 WL 389266, at *4 (S.D.N.Y. July 10, 1996) (citing *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310-311 (1984)). "[A] defense obligation may be avoided only where there is 'no possible factual or legal basis' on

which an insurer's duty to indemnify under any provision of the policy could be held to attach,"

*Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 82-83 (2d Cir. 2006) (quoting

*Servidone Constr. Corp.*, 64 N.Y.2d at 424); *see Brooklyn Ctr. for Psychotherapy, Inc. v. Phila.*

*Indem. Ins. Co.*, 955 F.3d 305, 310 (2d Cir. 2020), "or the insurer can show that the allegations

of the [underlying] complaint are solely and entirely within the policy exclusions, and that the

allegations, *in toto*, are not subject to any other interpretation," *Brooklyn L. Sch. v. Aetna Cas. &*

*Sur. Co.*, 849 F.2d 788, 789 (2d Cir. 1988) (cleaned up).

### B.    Policy Interpretation

Insurance policies "are interpreted according to general rules of contract interpretation."

*Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 98 (2d Cir. 2012).  Courts "may not

frustrate the intentions of the parties by altering the contract's terms or by reading into the

contract meanings not contemplated by the parties.  Instead, [courts] give the words of the

agreement their ordinary and plain meaning." *Jakobson Shipyard*, 961 F.2d at 389.  An

insurance policy "must be construed to effectuate the intent of the parties as derived from the

plain meaning of the policy's terms." *Andy Warhol Found. for Visual Arts, Inc. v. Fed. Ins. Co.*,

189 F.3d 208, 215 (2d Cir. 1999).  "Insurance policies are read in light of common speech and

the reasonable expectations of a businessperson." *United Nat'l Ins. Co. v. Granoff, Walker &*

*Forlenza, P.C.*, 598 F. Supp. 2d 540, 546 (S.D.N.Y. 2009) (cleaned up).  "Unambiguous

provisions" in the agreement are interpreted according to their "plain and ordinary meaning."

*Lavanant v. Gen. Accident Ins. Co. of Am.*, 79 N.Y.2d 623, 629 (1992).  If a provision is

ambiguous, however, it is construed against the insurer. *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d

351, 353 (1978).  A provision is ambiguous if it "could suggest more than one meaning when

viewed objectively by a reasonably intelligent person who has examined the context of the entire

integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Fabozzi v. Lexington Ins. Co.*, 601 F.3d 88, 90 (2d Cir. 2010) (cleaned up).

      **C.**    <u>**Application**</u>

      Allstate's entitlement to judgment on the pleadings turns on three issues: (1) whether Cavanaugh and the Vitality Defendants are "an insured" as defined in the Policies; (2) whether the acts alleged in the underlying complaints are covered by the Policies; and (3) whether any of the Policies' exclusions nevertheless bar coverage. *See Village of Piermont*, 151 F. Supp. 3d at 448. If there is any legal or factual basis on which to conclude that Allstate might eventually be required to indemnify a party under either of the Policies, Allstate's motion must be denied. *See Brooklyn Ctr. for Psychotherapy*, 955 F.3d at 310.

          **1.**    **Whether Allstate Has a Duty to Defend or Indemnify Cavanaugh**

      The Claimant Defendants allege that while they were Vitality patients, Cavanaugh, a physician's assistant employed by Vitality, subjected them to unwanted sexual advances, touching, or both. Certain of the Claimant Defendants bring additional claims, including allegations that Cavanaugh breached the accepted standard of care required of a physician's assistant. As these allegations raise no claims for which Allstate could be required to indemnify Cavanaugh under the Policies, Allstate does not owe Cavanaugh a defense as to any of the underlying actions.

          a.    Whether Cavanaugh's Alleged Sexual Acts
                  <u>Occurred Within the Scope of His Employment</u>

      Allstate first contends that Cavanaugh is not an "insured" as defined in the Policies and therefore is not covered thereunder. (P's Mem. at 18.) The Court agrees, as to Cavanaugh's

status during the alleged instances of sexual misconduct. Accordingly, Allstate has no obligation to defend or indemnify Cavanaugh for claims stemming from these allegations.

The Insurance Policies cover liabilities only of an "insured," which is defined to include a policyholder's employees, "but only for acts within the scope of [the employee's] employment by [the policyholder] or while performing duties related to the conduct of [the policyholder's] business." (AC Ex. A at 90; *id.* Ex. B at 31.) Neither of the Policies provides a definition for "scope of employment," but New York law instructs that "an employee acts within the scope of his employment if the relevant act was done while the [employee] was doing [the employer's] work, no matter how irregularly." *Lowy v. Travelers Prop. & Cas. Co.*, No. 99-CV-2727, 2000 WL 526702, at *3 (S.D.N.Y. May 2, 2000) (cleaned up). Determining whether a particular act is within the scope of the employee's employment "is heavily dependent on factual considerations and is therefore ordinarily a question for the jury," but where "there is no conflicting evidence as to the essential facts, a court may make this determination as a matter of law." *Pizzuto v. County of Nassau*, 239 F. Supp. 2d 301, 313-14 (E.D.N.Y. 2003). The relevant factors include

> the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated.

*Riviello v. Waldron*, 47 N.Y.2d 297, 303 (1979); *see Golodner v. Quessant Inc.*, No. 05-CV-7895, 2007 WL 2844944, at *4 (S.D.N.Y. Sept. 27, 2007) (applying *Riviello* as a five-factor standard); *Lowy*, 2000 WL 526702, at *3 (applying *Riviello* as a four-factor standard). Courts also consider whether the "employee's act [was] in furtherance of the employer's interests." *Rausman v. Baugh*, 682 N.Y.S.2d 42, 44 (App. Div. 1998); *see Lowy*, 2000 WL 526702, at *3. "New York courts generally place greater emphasis on whether the acts involved could reasonably have been anticipated by [the] employer." *Riascos-Hurtado v. United States*, No. 09-

18

CV-3, 2015 WL 3603965, at *4 (E.D.N.Y. June 5, 2015) (cleaned up). Courts apply this scope-of-employment precedent when determining whether an underlying complaint triggers a private insurer's duty to defend. *See Lowy*, 2000 WL 526702, at *3-4; *Lippold v. Duggal Color Projects, Inc.*, No. 96-CV-5869, 1997 WL 529014, at *1 (S.D.N.Y. Aug. 25, 1997); *McKay v. Healthcare Underwriters Mut. Ins. Co.*, 743 N.Y.S.2d 593, 595 (App. Div. 2002); *Somers v. Titan Indem. Co.*, 735 N.Y.S.2d 614, 615 (App. Div. 2001).

Here, although Cavanaugh denies wrongdoing, there is no dispute as to the facts alleged in the underlying complaints, and whether Allstate has a duty to defend turns on what is alleged in the underlying cases. *See A. Meyers & Sons*, 74 N.Y.2d at 302-03; *Mugavero*, 589 N.Y.2d at 159. Accordingly, the Court may determine whether Cavanaugh was acting within the scope of his employment as a matter of law. *See Pizzuto*, 239 F. Supp. 2d at 314; *see also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 567 (6th Cir. 2008) ("In the instant case, the district court properly concluded that a therapist's sexual affair with his patient is outside the scope of his employment as a matter of law.").

Turning to the first factor, the Claimant Defendants primarily allege that Cavanaugh's sexual acts occurred on Vitality's premises. (*See* AC Ex. D ¶ 18; *id.* Ex. G ¶ 4; *id.* Ex. I ¶ 12; *id.* Ex. K ¶ 13; P's Decl. Ex. S ¶ 4.) This factor therefore favors coverage. As to the history of the employer-employee relationship, some of the underlying complaints allege that Vitality had, or should have had, notice of the allegations against Cavanaugh. (*See, e.g.*, AC Ex. K ¶ 14.) But accepting that Vitality was put on notice of these allegations does not "somehow expand[] the scope of [Cavanaugh]'s employment to include sexual harassment." *Ludwigsen*, 2018 WL 4211319, at *11; *see Adorno v. Corr. Servs. Corp.*, 312 F. Supp. 2d 505, 517 (S.D.N.Y. 2004) (finding the principle that "tortious sexual activity generally is entirely divorced from the nature

of an employment position" is not altered by employer having notice of perpetrator's "propensity to commit sexual acts"). This factor therefore weighs against coverage. *See Ludwigsen*, 2018 WL 4211319, at *11.

The remaining factors all weigh against finding that Cavanaugh was acting within the scope of his employment. As to the third factor, "it cannot be said that [Cavanaugh]'s alleged sexual acts were commonly done by any type of [psychiatric practitioner], or are anything other than a departure from the normal methods of performance." *Id.* (cleaned up) (discussing sexual allegations against collegiate softball coach). As to the fourth factor, while an employee who commits an intentional assault may be acting within the scope of his or her employment if "the nature of the employee's duties made it foreseeable that such an assault would take place," *Adorno*, 312 F. Supp. 2d at 517, the allegations against Cavanaugh are not comparable to "a correction officer using excessive force to maintain order or a bartender committing assault to remove an unruly patron from a bar," *Ludwigsen*, 2018 WL 4211319, at *11. While a certain amount of physical contact may take place between a medical provider and patient, the allegations here do not present ambiguity: no reasonable interpretation of the scope of Cavanaugh's employment includes groping patients' breasts. *See id.* ("[N]o rational person would find instructional value in [a softball coach] asking players about their sex lives, licking their ears, or grabbing their breasts and buttocks while making inappropriate comments."). Cavanaugh's alleged actions did not serve any legitimate medical purpose. *See id.* Similarly, on the fifth and final factor, it is well established in New York that "sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context." *Adorno*, 312 F. Supp. 2d at 517 (collecting New York cases); *see George v. N.Y.C. Transit Auth.*, No. 04-CV-3263, 2008 WL 4274362, at

*3 (E.D.N.Y. Sept. 17, 2008) ("Acts of workplace harassment and other intentional torts are generally not considered conduct within the scope of employment since they are often motivated by personal reasons.") (collecting New York cases).  The underlying complaints suggest that Cavanaugh acted for personal reasons, *see Ludwigsen*, 2018 WL 4211319, at *11, and under no rational interpretation of the allegations could Cavanaugh's actions be said to have furthered Vitality's business.  The Court therefore finds that Cavanaugh's alleged sexual acts were conducted outside of the scope of his employment.  Accordingly, Cavanaugh is not an insured and the Policies do not provide coverage for Cavanaugh on these claims.

b.      Whether Cavanaugh's Alleged Sexual Acts
       <u>Constituted an Occurrence</u>

Even assuming that Cavanaugh were an insured, coverage for his alleged sexual acts would be barred under the Policies for two additional reasons:  first, the claims do not arise out of an "occurrence," and, second, coverage would be barred by the intentional acts exclusion.  Both Policies apply only to injuries "caused by an 'occurrence.'"  (AC Ex. A at 81; *id.* Ex. B at 22.)  An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (*Id.* Ex. A at 94; *id.* Ex. B at 37.)  This framework is common in insurance agreements, and New York courts have interpreted the term "accident" to mean something "unexpected, unusual, and unforeseen," and "a sudden and instant happening assignable to something catastrophic or extraordinary."  *Michaels v. City of Buffalo*, 85 N.Y.2d 754, 757-58 (1995) (cleaned up).  Whether an event is an "accident" is not determined by reference to the injured party, but in relation to the insured party.  *Id.* at 759; *see Agoada Realty Corp. v. United Int'l Ins. Co.*, 95 N.Y.2d 141, 145 (2000).  In the insurance context, an accident "is not given a narrow, technical definition by the law.  It is construed, rather, in accordance with its understanding by the average [person] who, of course, relates it to the factual

context in which it is used." *Miller v. Cont'l Ins. Co.*, 40 N.Y.2d 676 (1976) (cleaned up). An intentional act may still constitute an occurrence, as "[r]ecovery will be barred only if the insured intended the damages, or if it can be said that the damages were, in a broader sense, 'intended' by the insured because the insured knew that the damages would flow directly and immediately from its intentional act." *City of Johnstown v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1150 (2d Cir. 1989) (cleaned up) (collecting New York cases). "In those instances, coverage is precluded because the damages are not 'accidental.'" *Id.* at 1151; *see Brooklyn Ctr. for Psychotherapy*, 955 F.3d at 310-11.

The sexual misconduct claims unambiguously arise from allegations of intentional conduct by Cavanaugh. Assuming both the truth of the allegations and that Cavanaugh was an insured under the Policies, the events alleged were not "unexpected, unusual, and unforeseen" from Cavanaugh's perspective, even though they were unexpected by the victims. *See Michaels*, 85 N.Y.2d at 757-59. The outcomes alleged are not assignable to any fortuitous event, but only to Cavanaugh's own actions. *Id.* at 759. As such, these events are not accidents as to Cavanaugh. Nor would the average person consider the alleged groping of female psychiatric patients to constitute accidents for which Cavanaugh could receive insurance coverage. *See Miller*, 40 N.Y.2d 676.

In addition, due to the nature of the allegations against him, Cavanaugh is considered to have intended the harm that flowed from those acts as a matter of law. *See Smith v. N.Y. Cent. Mut. Fire Ins. Co.*, 785 N.Y.S.2d 776, 777-78 (App. Div. 2005) (inferring intent to harm from act of swinging a baseball bat at victim's head). In *Allstate Insurance Co. v. Mugavero*, 79 N.Y.2d 153 (1992), the New York Court of Appeals applied this concept to an insurance dispute stemming from the sexual abuse of a minor. The court reasoned that no such abuse could occur

without causing harm to the child and so the ensuing harm should be considered "intentionally caused," as a matter of law, as it related to the applicable policy exclusion. *See Mugavero*, 79 N.Y.2d at 161. The New York Appellate Division later inferred intent to harm from the rape of an adult, and further suggested that the breadth of its holding was not limited to such extreme offenses. *See Travelers Ins. Cos. v. Stanton*, 645 N.Y.S.2d 948, 949 (App. Div. 1996) ("[The] sexual contact with the victim was found by a jury to have been nonconsensual, that contact was intentional and the emotional harm deriving therefrom is inherent in the act itself, and defendant's intent to cause injury is legally inseparable from his intent to commit the tortious act."). Intent to harm has also been inferred where a psychiatrist began a consensual sexual relationship with his adult patient. *See Dodge v. Legion Ins. Co.*, 102 F. Supp. 2d 144, 151-52 (S.D.N.Y. 2000) (collecting N.Y. cases). The Court is persuaded that the reasoning and policy considerations of *Mugavero* and *Dodge* apply here and compel the inference that, as a matter of law, Cavanaugh intended the harm he allegedly caused by the nonconsensual sexual misconduct alleged against him. *See id.*; *see also Harleysville Worcester Ins. Co. v. Sharma*, 230 F. Supp. 3d 109, 116 (E.D.N.Y. 2017) (suggesting that if defendant had formed the intent to commit the act in question, "the harm from that act will be inferred pursuant to *Mugavero* and the expected and intended exclusion will likely apply"); *Dodge*, 102 F. Supp. 2d at 151 (for inherently injurious acts, cause and effect cannot be separated, and if the act is intentional, so is the harm; courts thus will not inquire into whether perpetrator had subjective intent to cause injury). Therefore, the Court finds that the claims arising from Cavanaugh's alleged sexual acts do not arise out of an occurrence, and accordingly, the Policies do not provide coverage for Cavanaugh on these claims.

Additionally, both Policies contain exclusions for injuries that are "expected or intended from the standpoint of the insured." (AC Ex. A at 83; *id.* Ex. B at 23.) While the burden rests with an insured to show that the provisions of the policy provide coverage, *see Chase Manhattan Bank, N.A.*, 702 N.Y.S.2d at 61, if that burden is met, the burden then shifts to the insurer to show that an exclusion applies, *see Those Certain Underwriters at Lloyd's, London v. DVO, Inc.*, 473 F. Supp. 3d 236, 257 (W.D.N.Y. 2020). "'The law governing the interpretation of exclusionary clauses in insurance policies is highly favorable to insureds.'" *Id.* (quoting *Pioneer Tower Owners Ass'n v. State Farm Fire & Cas. Co.*, 12 N.Y.3d 302, 306 (2009)). Allstate nevertheless surmounts this high burden here, as the intentional injuries exclusion is "specific and clear" even when "accorded a strict and narrow construction." *Id.* (cleaned up). The exclusion is unambiguous, and, for the reasons discussed above, its plain meaning prohibits coverage for intentional sexual torts. If Cavanaugh in fact groped his patients, he should have expected the harm he caused. Accordingly, the Policies do not provide coverage for Cavanaugh on these claims.

c.      Whether Cavanaugh's Alleged Standard of Care Breaches
Are Barred by the Professional Services Exclusion

To the extent that any of the Claimant Defendants' allegations are not disposed of above, the Court agrees with Allstate that coverage for any claims against Cavanaugh sounding in negligence or malpractice are barred under the Policies' professional services exclusion. (P's Mem. at 25.) Accordingly, Allstate has no obligation to defend or indemnify Cavanaugh on claims stemming from any remaining allegations.

Each of the Policies includes a professional services exclusion, which stipulates that the insurance agreement does not apply to injuries caused by, or due to "the rendering or failure to render any professional service." (AC Ex. A at 86; *id.* Ex. B at 26.) Both Policies expressly

include "medical . . . treatment, advice or instruction" within the list of professional services that are excluded. (*Id.* Ex. A at 86; *id.* Ex. B at 26.) "[U]nder New York Law, an insured performs professional services if the services provided involved the special acumen and training of professionals when the insured engaged in the acts challenged." *Lloyd's*, 473 F. Supp. 3d at 256 (cleaned up). This exclusion is unambiguous, and its plain meaning excludes coverage for any claim arising from Cavanaugh's practice as a physician's assistant. In addition, Vitality undoubtedly understood the difference between a general commercial liability policy and a medical malpractice policy, and the clear intent of the parties here was to exclude coverage for any claims of malpractice or professional negligence.

The Claimant Defendants generally assert that Cavanaugh "failed to provide good and sufficient care, and meet the standard of care for [a] physician's assistant." (P's Decl. Ex. S ¶ 17; *see also* AC Ex. D ¶ 65; *id* Ex. G ¶ 8; *id.* Ex. I ¶ 14; *id.* Ex. K ¶ 17.)[14] These claims tend to follow allegations of intentional misconduct by Cavanaugh. (*E.g.*, *id.* Ex. G ¶ 8 (alleging that Cavanaugh "inappropriately and unprofessionally touched the plaintiff in an inappropriate manner, which violated the good and accepted standard of care for physician's assistants.").) The Court fails to see how these intentional acts could be the product of negligence. *See Mugavero*, 589 N.Y.2d at 163 (finding that allegations of "intentional, forceful and violent

---

[14] Two of the Claimant Defendants also assert that Cavanaugh is liable under the theory of *res ipsa loquitur*. (*See* AC Ex. I ¶ 27; *id.* Ex. K ¶ 27.) These claims are covered by the same analysis as the various negligence claims. *Res ipsa loquitur* – "the thing speaks for itself" – under New York law "is not a cause of action but rather an evidentiary doctrine that allows an inference of negligence to be drawn solely from the happening of the accident upon the theory that certain occurrences contain within themselves a sufficient basis for an inference of negligence." *County of Erie v. Colgan Air, Inc*., 711 F.3d 147, 149 n.1 (2d Cir. 2013) (cleaned up).

assault" could not be brought within policy's coverage by claiming cause of action for

negligence). But even assuming Cavanaugh could be found liable for negligently violating the

standard of care applicable to physician's assistants, no claims brought forward and no facts

pleaded by the Claimant Defendants suggest any factual or legal basis for the Court to find that

Allstate could be responsible for indemnification. The Claimant Defendants bring claims against

Cavanaugh for professional negligence and plead facts indicative of professional negligence (if

any negligence at all). For example, Jane Doe alleges that Cavanaugh diagnosed her with

bipolar disorder without any scientific basis for this conclusion. (AC Ex. D ¶¶ 20-21.) If

Cavanaugh was found liable for negligence on this claim, indemnification by Allstate would be

barred by the professional services exclusion, as providing a medical diagnosis clearly involves

"special acumen and training." *See Lloyd's*, 473 F. Supp. 3d at 256. The same conclusion

applies, by definition, to allegations that Cavanaugh failed to meet the appropriate standard of

care for a physician's assistant. The Claimant Defendants do not plead facts that could support a

finding of ordinary negligence. Accordingly, Allstate has no duty to provide coverage to

Cavanaugh under the Policies.

> **2. Whether Allstate Has a Duty to Defend or Indemnify
> the Vitality Defendants**

The Claimant Defendants also bring a number of claims against the Vitality Defendants

in connection with the allegations against Cavanaugh. The Claimant Defendants allege that the

Vitality Defendants (1) breached the accepted standard of care required of a physician or medical

practice; (2) negligently hired, supervised, investigated, and retained Cavanaugh; or (3) are

vicariously responsible for Cavanaugh's acts.[15]  As these allegations raise no claims for which

Allstate could be required to indemnify the Vitality Defendants under the Policies, Allstate does

not owe Dr. Cabisudo or Vitality a defense as to any of the underlying actions.

Allstate does not dispute that Vitality and Dr. Cabisudo are "insureds" as defined by the

Insurance Policies.  (*See* AC Ex. A at 90; *id.* Ex. B at 31.)  Nor does Allstate dispute that, as to

the Vitality Defendants, the facts alleged in the underlying actions constituted "occurrences"

covered by the Policies, as Cavanaugh's alleged actions were "unexpected, unusual, and

unforeseen" from the standpoint of the Vitality Defendants even though they could be foreseen

by Cavanaugh.  *See Michaels*, 85 N.Y.2d at 757-59; *see also Agoada Realty*, 95 N.Y.2d at 145

(even though murder committed in apartment building was intentional from standpoint of

assailant, it was accident from standpoint of insured – the landlord accused of negligent

security).  The underlying complaints here do not suggest that the Vitality Defendants intended

the harm alleged or that they intentionally acted in a way that they knew would cause harm.  *See*

*Bankers Standard*, 877 F.2d at 1150.  Therefore, the crucial inquiry is whether any exclusion

under the Policies bars coverage for the Claimant Defendants' allegations against the Vitality

Defendants.

a.  Whether the Vitality Defendants' Alleged Standard of Care
Breaches Are Barred by the Professional Services Exclusion

Allstate contends that coverage for the Vitality Defendants is barred by the Policies'

professional services exclusion.  (P's Mem. at 29-31.)  Several of the Claimant Defendants

allege, by way of one formulation or another, that the Vitality Defendants were "negligent in

---

[15] As with Cavanaugh, see note 14 above, two of the Claimant Defendants also assert that
the Vitality Defendants are liable under the theory of *res ipsa loquitur*.  (*See* AC Ex. I ¶ 27; *id.*
Ex. K ¶ 27.)  These claims are covered by the subsequent analysis, whether they relate to
professional negligence or negligent supervision.

failing to provide good, accepted care that met the standard of care for a psychiatric group." (AC Ex. G ¶ 20; *see also id.* Ex. I ¶ 14; *id.* Ex. K ¶ 17; P's Decl. Ex. S ¶ 22.) With respect to allegations that the Vitality Defendants failed to meet the required standard of care, the Court agrees that the exclusion applies. Accordingly, Allstate has no obligation to defend or indemnify the Vitality Defendants on these claims.

As discussed in relation to Cavanaugh, both Policies include a professional services exclusion. The relevant provision stipulates that the insurance agreement does not apply to injuries caused by the rendering or failure to render "any professional service." (AC Ex. A at 86; *id.* Ex. B at 26.) Both Policies expressly include "medical . . . treatment, advice or instruction" within the non-exhaustive list of professional services that are excluded. (*Id.* Ex. A at 86; *id.* Ex. B at 26.) As stated above, this unambiguous provision excludes coverage for any claim arising from Dr. Cabisudo's or Vitality's medical practice, from their adherence or failure to adhere to professional standards, and from the provision of services requiring medical acumen or training. *See Lloyd's*, 473 F. Supp. 3d at 256. The clear intent of Allstate and the Vitality Defendants, as demonstrated by the plain meaning of the words chosen, was to enter into an insurance agreement that did not include coverage for medical malpractice. Accordingly, the Policies do not provide coverage for the Vitality Defendants on claims stemming from medical standard-of-care allegations.

> b. Whether the Vitality Defendants' Alleged Negligent Supervision Is Barred by the Abuse or Molestation Exclusion

The Claimant Defendants advance additional claims against the Vitality Defendants for negligent hiring, supervision, investigation, and retention. (*See* AC Ex. D ¶¶ 39, 43-49; *id.* Ex. G ¶ 20; *id.* Ex. I ¶ 14; *id.* Ex. K ¶ 17; P's Decl. Ex. S ¶ 22.) Allstate contends that these claims are also barred by the professional services exclusion, or, in the alternative, by the abuse or

molestation exclusion.  (*See* P's Mem. at 30-32.)  The Court agrees with Allstate only on the second point.

The professional services exclusion does not apply to every act done by a professional. *See Gen. Ins. Co. of Am. v. City of N.Y.*, No. 04-CV-8946, 2005 WL 3535113, at *5-6 (S.D.N.Y. Dec. 23, 2005).  If it did, significant portions of Vitality's business liability coverage from Allstate would be illusory.  *See Aspen Specialty Ins. Co. v. 4 NYP Ventures LLC*, 162 F. Supp. 3d 337, 345 (S.D.N.Y. 2016) ("Insurance coverage is illusory where the insured purchases no effective protection.").  Instead, "the pivotal issue here is whether [the] individuals involved . . . acted with the special acumen and training of professionals when they engaged in the acts challenged."  *Gen. Ins. Co. of Am.*, 2005 WL 3535113, at *5; *see Lloyd's*, 473 F. Supp. 3d at 256.  Under New York law, the "normal powers of supervision and observation" do not constitute acts requiring the special acumen and training of professionals.  *Reliance Ins. Co. v Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 691 N.Y.S.2d 458, 460 (App. Div. 1999).

Here, the Claimant Defendants allege, among other things, that the Vitality Defendants were or should have been aware of Cavanaugh's propensity for sexual misconduct at the time of his hiring, (AC Ex. D ¶ 37), and that the Vitality Defendants failed to adequately supervise or investigate Cavanaugh after being made aware of complaints by female patients, (*id.* Ex. K ¶¶ 14-15, 17).  These claims do not arise from acts that required "specialized knowledge" on the part of the Vitality Defendants.  *See Lumbermens Mut. Cas. Co. v. Flow Int'l Corp.*, 844 F. Supp. 2d 286, 303 (N.D.N.Y. 2012); *Reliance Ins.*, 691 N.Y.S.2d at 460.  Hiring, vetting, supervising and firing are done by employers of all kinds.  Accordingly, the professional services exclusion does not bar coverage for the Vitality Defendants on claims stemming from these allegations.

But the abuse or molestation exclusion of both Policies provides that the insurance agreement does not apply to the negligent employment, investigation, supervision, failure to report, or retention of any person whose conduct would constitute "[t]he actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured." (AC Ex. A at 105; *id.* Ex. B at 46.) Allstate contends that Cavanaugh's alleged conduct constitutes abuse or molestation and that the Claimant Defendants were in the care, custody or control of Vitality. (P's Mem. at 27.) The Vitality Defendants do not dispute that the Claimant Defendants were under their care, custody or control, but counter that Cavanaugh's alleged conduct could be found to include acts that do not amount to actual or threatened abuse or molestation. (Ds' Opp. at 19-20.) For that reason, they argue, Allstate should be required to defend the Vitality Defendants under a reservation of rights, as a potential basis for Allstate's obligation to indemnify would exist. (*Id.* at 20)

The Vitality Defendants correctly note that neither "abuse" nor "molestation" is defined in the Policies. (*Id.* at 18.) But that does not support the conclusion that the terms are therefore ambiguous and thus should be construed narrowly against Allstate. The failure to define a term does not require a court to find that term ambiguous. Ambiguity exists where the terms of an agreement are amenable to more than one reasonable interpretation, when viewed with the appropriate contextual understanding. *See Fabozzi*, 601 F.3d at 90. And contractual provisions are afforded their "plain and ordinary meaning" so long as they are unambiguous. *Lavanant*, 79 N.Y.2d at 629. The Court finds that "abuse" and "molestation" are unambiguous terms, the plain meaning of which encompasses the relevant sexual allegations against Cavanaugh.

The Vitality Defendants argue that Cavanaugh is accused of some acts that might amount to sexual harassment but not abuse or molestation, pointing to allegations that he gave out his

personal cellphone number and sent inappropriate sexual text messages to patients. (Ds' Opp. at 18-22; *see* AC Ex. C at 6.) But Murphy – who alleges that Cavanaugh sexted and propositioned her but alleges no physical contact – never brought a lawsuit and there is thus no need for defense or indemnification as to her. The remaining underlying plaintiffs all allege hands-on conduct that – when committed by a psychiatric provider and nonconsensual – manifestly amount to abuse or molestation. (*See* AC Ex. D ¶¶ 30-32; *id.* Ex. G ¶ 8; *id.* Ex. I ¶ 12; *id.* Ex. K ¶¶ 13, 15; P's Decl. Ex. S ¶ 8.)[16]

Moreover, any reasonable reading of the exclusion would include allegations of sexual harassment as well as sexual battery in the definition of "abuse or molestation."[17] It falls within the Black's Law Dictionary definition of molestation as first, "[t]he persecution or harassment of someone," and second, "[t]he act of making unwanted and indecent advances to or on someone, [especially] for sexual gratification." *Molestation*, Black's Law Dictionary (11th ed. 2019). Further, a reasonable person experiencing sexual harassment would perceive it as abuse. The exclusion, therefore, includes sexual harassment.

In urging the opposite conclusion, the Vitality Defendants primarily rely on *Village of Piermont v. American Alternative Insurance Corp.*, 151 F. Supp. 3d 438 (S.D.N.Y. 2015). (*See*

_____

[16] Doe alleges that Cavanaugh gave her his phone number and said he would be available to talk to her outside of her scheduled appointments. (AC Ex. D ¶ 24.) To the extent this could be regarded as an allegation of sexual harassment, it would not be covered for the reasons set forth below.

[17] The Vitality Defendants suggest that Cavanaugh could be found guilty of some sexual misconduct, such as sexual harassment or "forcible touching," that does not rise to the level of "abuse or molestation". (Ds' Opp. at 18-20.) The attempt to distinguish "forcible touching" from "abuse or molestation" demonstrates the weakness of this argument: a reasonable person would recognize the crime of forcible touching, as defined in N.Y. Penal Law § 130.52 (requiring, among other things, sexual contact or intentional touching of "sexual or other intimate parts"), as "abuse," in the ordinary meaning of the word, and conclude that Allstate and Vitality intended for the exclusion to prevent insurance coverage for such conduct.

Ds' Opp. at 20-21.) But that case is distinguishable. In the insurance agreement at issue in *Village of Piermont*, "sexual abuse" was a defined term and, most importantly, "sexual harassment," another defined term, was excluded from that definition. 151 F. Supp. 3d at 442. Not only did the policy's sexual abuse exclusion carve out sexual harassment, meaning it was not excluded, but the policy included sexual harassment among the list of improper "employment practices" for which it provided coverage. *Id.* As the claims in that case regarded employment practices that could be reasonably read to fall under the sexual harassment definition included in the agreement, the insurer was properly required to provide a defense. *Id.* at 450. Here, the relevant terms are not defined and the Policies do not contain any carve-out to the abuse or molestation exclusion or otherwise include sexual harassment in their coverage. In other words, the logic of *Village of Piermont*, which relies on the definitions set forth in the agreement, is inapposite here. If anything, carving out "sexual harassment" from the definition of "sexual abuse," as occurred in *Village of Piermont*, suggests that the plain meaning of the sexual abuse includes sexual harassment unless otherwise agreed. The Vitality Defendants point to a number of cases in which the insurance agreements included more detailed definitions of abuse, molestation, or similar terms. (Ds' Opp. at 21.) But the definitions articulated in other agreements do not dictate the meaning of the provision here. Instead, the intent of the parties to the agreement here, as demonstrated by the failure to define "abuse or molestation" and the lack of any carve-outs to the exclusion, accords with the conclusion based on the plain meaning of the provision: coverage for sexual harassment and other sexual misconduct is excluded under the broad understanding of the terms "abuse or molestation."

The Vitality Defendants further seize on the use of the phrase "actual or threatened abuse or molestation" to contend that any allegation must be proven, not just alleged, to fall under the

exclusion. (*Id.* at 22-23.) This argument misunderstands that for purposes of determining insurance coverage, the allegations of the underlying complaints are accepted as true. *See Great Am. Ins. Co. v. Houlihan Lawrence, Inc.*, 449 F. Supp. 3d. 354, 364 (S.D.N.Y. 27, 2020) ("If any allegations in the complaint fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be, an insurer must defend.") (cleaned up); *Fed. Ins. Co. v. Weinstein*, No. 18-CV-2526, 2019 WL 1407455, at *3 (S.D.N.Y. Mar. 28, 2019) ("Under both New York and Connecticut law, an insurance provider's duty to defend is determined solely by comparing the allegations on the face of the underlying complaint(s) to the terms of the policy.") (cleaned up); *Mugavero*, 589 N.Y.2d at 159 ("Although [the insured] denies the allegations of the [underlying] complaint, we must assume – for the purpose of determining coverage – that what is alleged actually happened."); *see also Euchner-USA, Inc.*, 754 F.3d at 140 ("[A]n insurer may be required to defend under the contract even though it may not be required to pay once the litigation has run its course.") (cleaned up). While it is correct that Allstate would be required to defend claims as to which a reasonable interpretation of the exclusion left a potential basis for indemnification, a reading that would require the insurer to defend the insured until the underlying allegation is deemed meritorious – even if there is no reasonable interpretation that would allow for indemnification – renders the exclusion toothless as to defense. The only reasonable reading of the "actual or threatened" language is to bar coverage for abuse or molestation that is alleged to have occurred or is alleged to have been threatened to the victim. The Vitality Defendants cite several cases in which the relevant policy exclusions specifically excluded coverage for allegations of harmful conduct. (*See* Ds' Opp. at 23.) But they fail to identify any repercussion of this drafting difference. As the Vitality Defendants note, if Allstate can demonstrate that there is no possible factual or legal

basis on which it could be obligated to indemnify an insured, it is not required to defend that insured in the action. (*Id.* at 23-24); *see Servidone Constr. Corp.*, 64 N.Y.2d at 424. It is therefore sufficient that Allstate demonstrates that the Claimant Defendants' allegations, if proven true, would be excluded from coverage. At that point, the allegations would be "actual" and would satisfy the language of the policy exclusion. As Allstate has made this showing, the abuse or molestation exclusion bars indemnification for the Vitality Defendants on these claims and, accordingly, Allstate has no duty to provide coverage under the Policies.

     c.  Whether Coverage Arises from the Vitality Defendants' Vicarious Liability for Cavanaugh's Acts

   Finally, two Claimant Defendants allege in the underlying cases that the Vitality Defendants are vicariously liable for the acts of their agent, Cavanaugh, under the theory of *respondeat superior*. (AC Ex. I ¶ 7; *id.* Ex. K ¶ 7.) This theory fails because, as discussed above, Cavanaugh was not acting within the scope of his employment when he committed the alleged acts, *see Rodriguez v. Judge*, 18 N.Y.S.3d 692, 694-95 (App. Div. 2015), or, to the extent he was, he was performing professional services for which coverage is barred by the policy exclusion. Vicarious liability therefore does not provide a distinct basis on which Allstate could be required to defend the Vitality Defendants.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings is

GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motion, (Doc.

75), enter judgment for Plaintiff, and close the case.

**SO ORDERED.**

Dated: May 4, 2021
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.